UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ACE HARDWARE CORPORATION,

                Plaintiff,                No. 04-CV-73360-DT

vs.                                              Hon. Gerald E. Rosen

OWOSSO ACE HARDWARE, LLC,
OXFORD VILLAGE HARDWARE, INC.,
NATHAN GROVE, COURTNEY GROVE,
HAROLD S. GROVE and MARY ANN GROVE,

                Defendants.
_____/

OPINION AND ORDER REGARDING PLAINTIFF'S
REQUEST FOR MONEY JUDGMENT AND
DEFENDANTS' OBJECTIONS TO REQUEST

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     October 29, 2008

PRESENT: Honorable Gerald E. Rosen
                 United States District Judge

I. INTRODUCTION

On September 28, 2007, this Court entered an Opinion and Order granting Plaintiff Ace Hardware Corporation's motions for summary judgment and denying Defendants' cross-motion for partial summary judgment, and, accordingly, entered a Judgment of Liability in favor of Plaintiff and against Defendants in this breach of contract action. Defendants thereafter sought reconsideration of the Court's Opinion and Order. The

1

Court denied the Motion for Reconsideration on July 15, 2008. This matter is now before the Court on Plaintiff's Request for entry of a Money Judgment, as supplemented pursuant the Court's directive on August 4, 2008. Defendants have filed Objections to Plaintiff's Request and Defendants have responded to those Objections.

Having reviewed and considered Plaintiff's Request, Defendants' Objections, Plaintiff's Response to those Objections, and the entire record of this case, the Court is now prepared to rule on this matter. This Opinion and Order sets forth the Court's ruling.

## II. DISCUSSION

In its Supplemental Request for Money Judgment, Ace Hardware has requested a judgment against Defendants Owosso Ace Hardware LLC, Oxford Village Hardware, Inc., Harold S. Grove, Maryann Grove, Nathan Grove and Courtney Grove,[1] jointly and severally, for amounts due and owing on the Promissory Note, in the principal amount of $375,138.92, plus default interest as provided for in the Note in the amount of $133,138.92, for a total amount due and owing under the Note in the amount of $508,741.84, plus attorneys fees and costs in the amount of $185,157.81.

Plaintiff further requests a judgment against Owosso Ace Hardware, LLC, Nathan

---

[1] Defendant Owosso Ace Hardware, L.L.C. ("Owosso") is a Michigan limited liability company which formerly operated as an Ace store in Owosso, Michigan. Defendant Nathan "Nate" Grove is Owosso's Managing Member. Nathan's father, Defendant Harold "Sonny" Grove, has a 50% interest in the L.L.C. Harold is also the owner of a number of other Ace Hardware stores in Michigan, including Defendant Oxford Village Hardware, Inc. ("Oxford"). Defendant Courtney Grove is Nathan Grove's wife and Defendant Maryann Grove is Harold Grove's wife.

Grove and Courtney Grove, jointly and severally, for amounts owing for merchandise and services purchased on account ("Account Receivable") pursuant to the Ace Membership Agreement, in the principal amount of $58,550.58, plus pre-judgment interest pursuant to M.C.L. § 600.6013(7) in the amount of $29,924.96, for a total award of damages related to the Account Receivable in the amount of $88,475.54.

Defendants do not dispute the amounts due on the Note for principal and interest, nor do they dispute the principal amount due on the Account Receivable. However, they do dispute the pre-judgment interest amount on the Account Receivable. They also contest the amount sought for attorneys' fees.

A. <u>PRE-JUDGMENT INTEREST</u>

As indicated, Plaintiff calculated the amount of pre-judgment interest on the $58,550.58 due and owing on the Account Receivable using Michigan's pre-judgment interest statute, M.C.L. § 600.6013(7). *See* Affidavit of Thomas Petrich, ¶¶ 4-5. That statute provides as follows:

> For a complaint filed on or after July 1, 2002, if a judgment is rendered on a written instrument evidencing indebtedness with a specified interest rate, interest is calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate specified in the instrument if the rate was legal at the time the instrument was executed. If the rate in the written instrument is a variable rate, interest shall be fixed at the rate in effect under the instrument at the time the complaint is filed. <u>The rate under this subsection shall not exceed 13% per year compounded annually</u>.

M.C.L.A. § 600.6013(7) (2008 Supp.) [Emphasis added.]

Pursuant to the Ace Hardware Membership Agreement, interest in the form of a

3

"Late Payment Service Charge" on unpaid balances owing for merchandise and services purchased on account accrues at the rate of .77% bi-weekly, which amounts to 20.02% annually. *See* Petrich Aff., ¶ 4 and Affidavit Ex. B, Ace Hardware Membership Agreement, Article II, ¶ 11. However, because M.C.L. § 600.6013(7) caps the amount recoverable for such "pre-judgment interest" at 13%, compounded annually, Ace used this percentage to arrive at the $29,924.96 sum for pre-judgment interest.

Defendants, however, dispute the use of Michigan's pre-judgment interest statute to calculate the amount of pre-judgment interest recoverable on the Account Receivable. They argue that because the Ace Membership Agreement provided for application of Illinois law,[2] and this Court has already determined that the choice of law provision in the Membership Agreement was valid, *see* September 28, 2007 Opinion and Order, § III-B, Illinois' pre-judgment interest statute, 815 I.L.C.S. 205/2, should be used in calculating pre-judgment interest on the Account Receivable.

The Illinois pre-judgment interest statute provides a substantially lower rate of interest than the Michigan statute. 815 I.L.C.S. 205/2 provides:

> Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's

---

[2] *See* Ace Hardware Membership Agreement, Article V, ¶ 1(a) ("[A]ll provisions of this Agreement shall be interpreted and construed in accordance with the laws of the Illinois. . . .")

knowledge; and on money withheld by an unreasonable and vexatious delay of payment. . . .

Courts in the Sixth Circuit have on several occasions faced the issue of competing state pre-judgment interest statutes in diversity breach of contract actions and have consistently held that the state law governing the substantive breach of contract claim also applies in calculating pre-judgment interest.

For example, in *F.D.I.C. v. First Heights Bank, FSB*, 229 F.3d 528 (6th Cir. 2000), the FDIC brought suit in the District Court for the Eastern District of Michigan against Pulte Diversified Companies, Inc., and First Heights Bank, a subsidiary created by Pulte, for breach of an Assistance Agreement and several related subsequent contracts entered into by the parties, pursuant to which First Heights Bank agreed to assume the liabilities of five insolvent savings and loan associations in exchange for financial assistance from the FDIC. The Assistance Agreement provided for application of Texas law and the court applied Texas law in deciding the FDIC's summary judgment motions concerning the substantive breach of contract issues. 229 F.3d at 534, 536-37, 541-42. The Court also held that Texas law governed the award of prejudgment interest. *Id.* at 542-44. ("In diversity cases in this Circuit, federal law controls postjudgment interest, but state law governs awards of prejudgment interest." *Id*. at 442, citing *Clissold v. St. Lous-San Francisco Rwy. Co.,* 600 F.2d 35, 29 n. 3 (6th Cir. 1979)).

The Sixth Circuit subsequently re-affirmed the *FDIC* holding in *Truform, Inc. v. General Motors Corporation*, 80 Fed. Appx. 968 (6th Cir. 2003). In that case, Truform,

an automobile parts supplier and components manufacturer, sued General Motors for breach of contract in the District Court for the Northern District of Ohio. Following a bench trial, the district court entered a judgment resulting in an award for the supplier that included prejudgment interest. There was no dispute that Michigan law governed the contract claims, *id*. at 973, and the appellate court affirmed the district court's findings as to the breach of contract and other substantive issues. *Id.* at 979.

The appellate court also found no error with the district court's application of Michigan law in calculating prejudgment interest:

> The district court correctly applied the Michigan rate to calculate the prejudgment interest. In diversity cases, state law governs an award of prejudgment interest. *FDIC v. First Heights Bank, FSB*, 220 F.3d 528, 542 (6th Cir. 2000). In *First Heights*, a federal district court in Michigan tried a breach of contract action under Texas law. We concluded that the district court properly considered the Texas rate, rather than the Michigan rate, to determine the prejudgment interest on the damages awarded for breach of contract. *Id.* at 542-43. The circumstances in *First Heights* directly parallel the circumstances in this case, and accordingly, we reach a parallel conclusion. The district court did not err when it used the Michigan rate, rather than the Ohio rate, to calculate the prejudgment interest.

*Id.* at 975.

In ensuing years, the district courts in this Circuit have likewise determined that the state law that governs a contract dispute, rather than the law of the state where the case is tried, also applies with regard to prejudgment interest. *See e.g., Meridian Leasing, Inc. v. Associated Aviation Underwriters*, 297 F. Supp. 2d 972, 984 (W.D. Mich. 2004) (because California law governed underlying breach of contract action,

6

California law was also applicable to issues regarding pre-judgment interest); *Acme Contracting, Ltd. v. Toltest, Inc.*, 2008 WL 2782922 (E.D. Mich., July 17, 2008) (where contract provided that it was to be governed by Ohio law, damages awarded under the contract will have prejudgment interest calculated based on Ohio law).

The foregoing authorities establish that Plaintiff's argument that the law of the forum state, i.e., Michigan law, and not the law governing the contract applies is without merit. In support of its position, Plaintiff points to *Rhea v. Massey-Ferguson, Inc.*, 767 F.2d 266 (6th Cir. 1985), a diversity negligence action tried in the Eastern District of Michigan, in which the appellate court stated "federal courts sitting in diversity cases will apply the forum state's law in assessing pre-judgment interest." *Id.* at 270, citing *American Anodco, Inc. v. Reynolds Metals Co.,* 743 F.2d 417, 425 (6th Cir. 1084) and *Clissold v. St. Louis-San Francisco Rwy. Co.*, 600 F. 2d 35, 39 n. 3 (6th Cir. 1979). However, in *Rhea*, Michigan substantive law governed the underlying negligence action and Michigan was the forum state. The same is true of the cases cited by the *Rhea* court. *American Anodco* involved an action for breach of contract governed by Michigan law and the case was tried in Michigan.[3] Similarly, *Clissold* was a personal injury action governed by Michigan law and Michigan was the forum state.

Furthermore, there was no issue in any of these cases of competing state pre-

---

[3] There is no mention of "forum" state law in *American Anodco*. Rather, all that the court there said was that "[i]n diversity cases, federal courts follow state law on the question of prejudgment interest." 743 F.2d at 425.

judgment interest statutes. Rather, the issue was whether state law, or federal law, governed. Thus, in affirming the district court, the *Rhea* court held,

> [T]he district court applied Michigan Statutes Ann. § 27A.6013 [M.C.L.A. § 600.6013] to calculate Rhea's pre-judgment interest on the jury award from the date his complaint was filed. The district court applied the federal post-judgment interest rate provided by 28 U.S.C. § 1961. Massey-Ferguson maintains that under *Erie Railroad Co. v. Tomkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the federal interest rate should govern both pre-judgment and post-judgment interest. This Court, however, has held that federal courts sitting in diversity cases will apply the forum state's law in assessing pre-judgment interest. *American Anodco, Inc. v. Reynolds Metals Co.*, 743 F.2d 417, 425 (6th Cir.1984); *Clissold v. St. Louis-San Francisco Railway Co.*, 600 F.2d 35, 39 n. 3 (6th Cir.1979).

767 F.2d at 270.

Having reviewed and considered the foregoing cases, the Court finds that Defendants' objections as to Plaintiff's request for an award of pre-judgment interest on the principal amount owed by Defendants on the Account Receivable are well-taken. The Court will, accordingly, award pre-judgment interest on amounts due and owing on the Account Receivable pursuant to the Illinois pre-judgment interest statute, 815 ILCS 205/2.

B.   ATTORNEYS' FEES

Defendants also challenge as Plaintiff's request for a $185,157.81 award of attorneys' fees. From the Court's review of the attorney invoices provided, $11,818.51 of this sum is actually for costs and expenses; the remainder, $173,339.30, is for attorneys' fees.

All of the Loan Documents[4] pertaining to Defendants' indebtedness on the Promissory Note provide for the payment of "Enforcement Costs," which include attorneys' fees.

> Paragraph 7 of the Promissory Note provides:
>
> If (i) this Note or any Loan Document is placed in the hands of an attorney for collection or enforcement or is collected or enforced through any legal proceeding; (ii) an attorney is retained to represent Lender in any bankruptcy, reorganization, receivership or other proceeding affecting creditors' rights and involving a claim under this Note, the Loan Agreement or any other Loan Document; (iii) an attorney is retained to protect or enforce the lien of any Loan Document; or (iv) an attorney is retained to represent Lender in any other proceedings whatsoever in connection with this Note, the Loan Agreement, any of the Loan Documents or any property subject thereto, then Maker shall pay to Lender all reasonable attorneys' fees, costs and expenses incurred by Lender in connection therewith, in addition to all other amounts due hereunder.

[*See* Promissory Note, Plaintiff's Summary Judgment Ex. 3, ¶ 7. *See also,* Corporate Guaranty, Ex. 6, ¶ 7, Nathan and Courtney Grove Personal Guaranty, Ex. 7, ¶ 7; Harold

---

[4] The Promissory Note, Loan Agreement, Security Agreement, Corporate Guaranty of Oxford Village Hardware, and the Personal Guaranties of Nathan and Courtney Grove and Harold S. and Maryann Grove, are collectively referred to herein as the "Loan Documents."

S. and Maryann Grove Personal Guaranty, Ex. 8, ¶ 7.]

The Dealer Financing Program Loan Agreement provides,

> **Attorneys' Fees.**  Borrower will pay Lender's attorneys' fees and costs in connection with the administration and enforcement of this Agreement. . . .

[Plaintiff's Summary Judgment Ex. 4, ¶ 8.3.]

All of these Loan Documents are governed by Georgia law.  The Promissory Note provides, in relevant part,

> Maker agrees that (i) this instrument and the rights and obligations of all parties hereunder shall be deemed to be made under, and shall be governed by and construed under the substantive laws of the State of Georgia, without reference to the conflict of laws principles of such state. . . .

[*See* Promissory Note, Plaintiff's Summary Judgment Ex. 3, ¶ 9.2.  *See also* Loan Agreement, Ex. 4, ¶ 9.11; Security Agreement, Ex. 5, ¶ 12; Corporate Guaranty of Oxford Village Hardware, Ex. 6, ¶ 9; Personal Guaranty of Nathan and Courtney Grove, Ex. 7, ¶ 9; Personal Guaranty of Harold S. and Maryann Grove, Ex. 8, ¶ 9].[5]  This Court held in its September 28, 2007 Opinion and Order that these choice of law provisions calling for application of Georgia law were valid.  *See* 9/28/07 Opinion and Order, pp. 24-27.

Under Georgia law, to recover attorneys' fees under a promissory note or other document evidencing an indebtedness, it is not enough to simply include a provision for recovery of such fees in the document and prove default under the note or document

---

[5]  There is no provision for the payment of attorneys' fees in the Membership Agreement, which, as indicated, is governed under Illinois law.

evidencing indebtedness. In addition,

> The holder of the note or other evidence of indebtedness, or his attorney at law, **shall**, after maturity of the obligation, **notify the maker, endorser, or party sought to be held on said obligation** that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party sought to be held on said obligation has ten days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, endorser, or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. The refusal of a debtor to accept delivery of the notice specified in this paragraph shall be the equivalent of such notice.

Ga. Code Ann. § 13-1-11(a)(3).

This provision applies not only to the original creditor but also to assignees. *See Murdock Acceptance Corp. v. Wagnon*, 587 F.2d 764 (11th Cir. 1979). Where the creditor or assignee of a promissory note fails to give proper statutory notice to the debtor, recovery of attorneys' fees is not authorized under Georgia law. *Holt v. Rickett*, 143 Ga. App. 337, 238 S.E.2d 706 (1977). To be a proper demand notice, to entitle a promissory note holder to attorneys' fees, the notice must (1) be in writing, (2) directed to the party sought to be held on the obligation, (3) after maturity, (4) state that the provisions relative to payment of attorneys' fees in addition to principal and interest will be enforced, and (5) state that the party has 10 days from the receipt of such notice to pay the principal and interest without the attorney fees. *Trust Associates v. Snead*, 251 Ga. App. 475, 559 S.E. 2d 502 (2002).

Furthermore, only "reasonable" attorneys' fees are recoverable, and

> If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent [of the principal and interest recoverable], such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00.

Ga. Code Ann. § 13-1-11(a)(2).

Application of this provision would mean that Plaintiff may only recover $17,358.93 as attorneys' fees (15% of $500 plus 10% of $172,839.30), not the $173,339.30 requested.

However, Plaintiff's request for attorneys' fees is more fundamentally flawed inasmuch as no evidence whatsoever has been presented at any time during the course of this litigation to establish that Plaintiff complied with the notice requirements set forth in subsection (3) of the Georgia statute. The burden is on the entity seeking to collect attorney fees on a note in default to prove that all the conditions of the Georgia attorneys' fee statute have been met. *Citizens & Southern Nat. Bank v. Bougas*, 149 Ga. App. 722, 726, 256 S.E. 2d. 37, 41 (1979) *rev'd on other grounds*, 245 Ga. 412, 265 S.E. 2d 562 (1980); *Walton v. Johnson*, 213 Ga. 108(3), 97 S.E.2d 310 (1957). In particular, proof of notice of intent to seek attorneys' fees in compliance with the statute is necessary to recover attorneys fees in suit on a note. *NationsBank N.A. (South) v. Tucker*, 231 Ga. App. 622, 500 S.E.2d 378, 380 (1998). Notice may be given any time between maturity of the obligation and ten days prior to judgment. *New House Products, Inc. v. Commercial Plastics & Supply Corp.*, 141 Ga. App. 199, 233 S.E. 2d 45 (1977); *Merritt*

*v. First State Bank of Randolph County*, 162 Ga. App. 15, 16, 289 S.E. 2d 547, 549 (1982) .

Because Plaintiff here has not demonstrated its compliance with the Georgia attorneys' fees statutory notice provisions, it may not recover attorneys' fees.[6] Plaintiff may, however, recover the costs and expenses incurred in prosecuting this matter. As indicated above, the attorney invoices provided to the Court show that of the total amount for fees and costs requested, $11,818.51 is for costs and expenses. The Court will enter Judgment reflecting this amount.

      SO ORDERED.


                        s/Gerald E. Rosen
                        Gerald E. Rosen
                        United States District Judge

Dated: October 29, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 29, 2008, by electronic and/or ordinary mail.

                        s/LaShawn R. Saulsberry
                        Case Manager

---

[6] Plaintiff may seek reconsideration of this ruling if, within the time limits set forth in Fed. R. Civ. P. 59(e) and Eastern District of Michigan Local Rule 7.1(g), it produces evidence that it timely provided Defendants with notice of its intent to seek attorneys' fees in compliance with Georgia law.